[Civ. No. 1216. Fourth Appellate District.—June 22, 1933.]

COLORADO PACIFIC LAND COMPANY (a Corporation), Respondent, v. CLINTON E. WORDEN COMPANY (a Corporation), Appellant.

Borton & Petrini for Appellant.

Siemon & Garber, Alfred Siemon and T. F. Claflin for Respondent.

ANDREWS, J., *pro tem.*—This is an action to quiet title, based on adverse possession. ■ During the time adverse possession is claimed to have been running in favor of plaintiff on the tract of 4.85 acres involved defendant was the record owner thereof. It was also owner of 80.65 acres lying in the northwest quarter of section 4, north of Kern River. During said time plaintiff was the record owner of 78 acres lying in said northwest quarter of section 4, south of the Kern River, being all the land in said quarter south of the river, except the said 4.85-acre· tract. The Kern River runs through the quarter from its northeast corner to the. southwest corner, dividing it into nearly equal parts. The quarter contained 163.50 acres according to government survey. The tax receipts introduced in evidence show the lands of the parties listed for taxation in said section 4, as follows: To defendant, all north of river in section 4, 85 acres; to plaintiff, the northwest quarter, section 4, south of river, 78 acres. In which assessment did the assessor include the 4.85-acre tract?

The law requires each person to make a statement of property owned by him and deliver it to the assessor, from which, with such additional information as he may require the parties to produce, and such investigation as he may make on his own account, he enters in the assessment-book the data by and upon which is fixed the value of such property for taxation purposes. The primary concern of the assessor is that all property in the county shall be listed for taxation and that there is no duplication which would result in double taxation. The reason for requiring an estimate of the acreage of lands listed under government surveys to be included in the assessment-books is thought to be that as to such lands the value, which is the final goal of an assessor, is commonly determined, as is shown by all the tax receipts in evidence, by applying a price per acre to arrive at the value, and in adjacent areas the same price is commonly used, as is shown in this case by the tax receipts.

Assuming that the parties each made the statement in the form above set forth or that the assessor on special investigation made, or corrected the assessment to its present form, what intent should be inferred therefrom? The assessor was interested to see that the 163.50 acres in the quarter-

section were taxed, and not in how it was described or to whom assessed or who paid it.

It is argued that the excess in acreage found in defendant's listing might be accounted for in the fact that it might own other land in section 4 north of the river not in this quarter, but absence of proof in this regard, with sufficient incentive to produce such proof if it existed, and an inspection of the maps put in evidence, seem to make such a claim untenable. It might more reasonably be assumed that the assessor knew or ascertained the fact to be that in that quarter defendant in fact owned 85 acres and plaintiff 78 acres and, as they could be required by law to pay only on what they owned, and each had correctly given in their statements the acreage they owned, even if under rather loose descriptions, that he fixed the value for taxation purposes upon that understanding and basis.

In both descriptions, the parties simply ignored the 4.85-acre tract rather than go to the trouble of noting it by exception, and for long years—indeed always by these parties —it had been done that way with no misunderstanding or complaint, or reason to change, because each thereby paid the correct amount of tax according to the land owned. The accuracy of the description did not affect the assessor's problem at all, which, as suggested, is to find what property a person owns and its value. Of course, in conveyances of land the description controls where the acreage differs from what would be indicated by it.

Here the only inquiry is what was the basis or reason for fixing the value upon plaintiff's property at an amount produced by multiplying 78 acres by a certain price per acre and the defendant's value at 85 acres by using the same figure. Neither estimate of acreage is justified by the manner of describing the land. The contention that, because the land of plaintiff was described in a form which included the 4.85-acre tract, it was therefore in law assessed to plaintiff, gives no significance to the statement as to the acreage and the use made thereof.

It is obvious that a description indicating 100 acres, and specification of only 10 acres or a description which would include only 10 acres with a declaration of 100 acres for taxation, would require the assessor to ascertain the facts as to ownership and intention, and if the investigation dis-

closed the acreage right as corresponding to ownership, and descriptions wrong, the assessor would be bound to proceed upon that fact and assess upon the acreage, and the description might be disregarded. While this should be corrected, and if not, might invalidate the tax lien, that would have nothing to do with the duty to fix the value for taxation of each owner's land by the method being used, which was by acres.

The plaintiff corporation was attempting to obtain from its adjoining neighbor, the defendant corporation, not by bargain and sale, or for any compensation, but by trespass so long continued that the law of adverse possession permits plaintiff to keep it, this 4.85 acres of sand and brush in the river bottom, mostly incapable of any use, and the use of which, surrounded as it was by plaintiff's other land, might, if it could have been discovered, have been too trifling to suggest a purpose to acquire title thereby.

Plaintiff's original deed was for all the land in this quarter south of the river, which included the 4.85-acre tract, which was thereby ignored, as it seems always to have been. But, as its grantor had no title to the 4.85 acres, plaintiff acquired no title, but simply took title to the 78 acres which the grantor owned. The 4.85-acre tract had belonged to defendant for years before plaintiff's deed. Plaintiff used this deed as color of title at the trial to extend such occupancy as it could show of a minor part of the tract to a claim of use of the whole tract.

In acquiring title by this method the law requires the taxes to be paid. This safeguard is very important as affording a definite kind of notice, particularly to nonresident owners, that someone is paying their taxes and therefore probably trying to obtain their land by bold and persistent trespass. The policy of the law would require strict construction of a statute which permitted title to be acquired as in this case, and resolve matters of doubt against plaintiff's contention. That is, plaintiff must make it clearly appear that it was, during five years, paying defendant's taxes upon this tract.

In the present case the defendant, while possibly not appreciating the technical question of description involved in the assessment, did know it was paying taxes every year on 85 acres, which would include this small tract, and which

724

was all the land it owned in that section. In the same way it should be reasoned that the plaintiff knew it was paying taxes on 78 acres, which was all the land it owned, and was not paying on the 4.85 acres.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 21, 1933.